Ivan C. McLEOD, Regional Director of the Second Region of the National Labor Relations Board, for and ON BEHALF OF THE NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, INDEPENDENT, and Local No. 1814, International Longshoremen's Association, Independent, Respondents.

Civ. No. 19996.

United States District Court
E. D. New York.

Oct. 20, 1959.

Stuart Rothman, Washington, D. C., by Jacques Schuree, Washington, D. C., of counsel, for petitioner.

Sullivan & Cromwell, New York City, by William A. Ziegler, Jr., New York City, of counsel, for American Sugar Refinery.

Waldman & Waldman, New York City, by Martin Markson, New York City, of counsel, for respondent, International Longshoremen's Association, Independent.

Joyce, Campbell & Peluso, New York City, by Matthew A. Campbell, New York City, of counsel, for respondent, Local No. 1814.

RAYFIEL, District Judge.

The National Labor Relations Board, hereinafter called the Board, filed a petition for a preliminary injunction restraining the respondents, International

Longshoremen's Association, Independent, and International Longshoremen's Association, Independent, Local 1814, hereinafter called International and Local 1814, respectively, from conducting and maintaining a strike at the Brooklyn plant of American Sugar Refining Company, hereinafter called American Sugar, pending the determination by the Board of charges filed by American Sugar against said respondents.

The said petition was filed under § 10(*l*) of the National Labor Relations Act, 29 U.S.C.A. § 160(*l*), hereinafter called the Act, which provides that if a person is charged with engaging in an unfair labor practice within the meaning of paragraph (4) (A), (B) or (C) of § 8(b) of the Act, 29 U.S.C.A. § 158(b), an investigation of such charge shall be made, and if, after such investigation, the officer or regional attorney to whom it has been referred has reasonable cause to believe that the charge is true, he shall petition the United States District Court for appropriate injunctive relief pending the final adjudication of the Board.

American Sugar's charge, filed on August 3, 1959, accuses the respondents of unfair labor practices in that they, their officers, agents and representatives, jointly and severally, induced and encouraged its employees to engage in a concerted refusal in the course of their employment to process, transport or otherwise handle or work on goods and articles or to perform services, with the object of forcing American Sugar to recognize and bargain with them, jointly and severally, as the representatives of certain of their employees, despite the fact that the Independent Sugar Workers Union, hereinafter called Independent, had been certified as the representative of such employees under the provisions of § 9 of the Act, 29 U.S.C.A. § 159. Section 8(b) (4) (C) of the Act makes it an unfair labor practice to commit the acts so charged.

A hearing was held on August 26, 27 and 28, 1959, at which testimony was adduced and documentary and other evidence received. From the pleadings and the evidence presented at the hearing I find the facts to be as follows: Independent filed a petition with the Board for certification as the bargaining representative for certain of the employees of American Sugar. After a hearing on said petition in which Independent, American Sugar and the respondents participated, the parties entered into a consent election agreement which provided, *inter alia*, that the following bargaining unit of employees would be covered:

"All dock employees at the Brooklyn refinery of The American Sugar Refining Company, including table men, electric truck operators, sling makers, relief men and cleaners, shuttle men, sling collectors, sweepers, empty bag collectors, weighers, samplers, pay loader operators, and crane operators, *but excluding* all office and plant clerical employees, timekeepers, *longshoremen*, guards, watchmen, and supervisors as defined in the Act." (Emphasis added.)

Independent received a majority of the votes cast at the election held pursuant to said agreement and, pursuant to the provisions of the Act, the Board duly certified it as the exclusive bargaining representative of said unit of American Sugar's employees. International filed objections to the conduct of the election and the certification of Independent. The Board, after due consideration of said objections, found them to be without merit, and dismissed them. Despite such certification the respondents, labor organizations within the meaning of §§ 2(5), 9(b) and 10(*l*) of the Act, 29 U.S. C.A. §§ 152(5), 159(b), 160(*l*), as is Independent, have demanded that American Sugar recognize and bargain with them as the bargaining representatives of certain of the employees within said certified unit, and have requested, appealed to, and even directed employees of American Sugar and other employees to refuse to perform services for their respective employers.

On August 5, 1959, the respondents began a strike against American Sugar and thereafter picketed its Brooklyn, Philadelphia and Baltimore plants, and, among other things, prevented the unloading of a cargo of raw sugar from a vessel lying at its dock, which adjoins its Brooklyn refinery, from which it ships some $25,000,000 worth of its products annually to points outside the State of New York.

There is evidence in the record to support the claim that the respondent International engaged in a strike against American Sugar, and sought to induce or encourage its employees, and those of other employers, to refuse in the course of their employment to process, transport, handle or work on the goods of or perform services for their respective employers, and that it is reasonable to believe that the purpose or object of such acts and conduct was to force or require American Sugar to bargain with it, instead of with Independent, as the representative of certain of American Sugar's employees. The evidence against respondent Local 1814, while somewhat less conclusive, is adequate to sustain American Sugar's charge and the Board's finding that there is reasonable cause to believe that both respondents have engaged in acts and conduct which are violative of § 8(b) (4) (C), and which affect commerce within the meaning of § 2, subsections (6) and (7) of the Act.

International's claim that it picketed American Sugar's plant merely to inform the public that it had violated the General Cargo Agreement, hereinafter referred to, and failed to abide by the arbitrator's decision thereunder, is negated by the incidents described herein, as well as others in the record.

The transcript of the testimony taken at the hearing discloses, among other things,

a—that a Mr. Collazzo, a Vice President and an organizer of the respondent International, directed its members not to discharge a cargo of raw sugar from a vessel then docked at the American Sugar plant, and stated, in response to questions asked of him, that his purpose in so doing was to force American Sugar to recognize it as the exclusive bargaining representative of workers in several categories of employment covered by American Sugar's agreement with Independent, the certified union, and to employ only International's men in such jobs. Collazzo was accompanied by delegates and other representatives of Local 1814 on that occasion;

b—that in a talk which he was permitted to make to members of Independent he warned them that they would be discharged if they refused to join International;

c—that Walter Harun, a delegate for Local 1814, talked to the drivers of two trucks who were about to pick up loads of sugar from the American Sugar plant, and requested them not to load their trucks;

d—that Anthony Pimpinella, also a delegate for Local 1814, called at the American Sugar plant on or about July 31, 1959, together with two officers of International, and told one Stroy, shop steward, that he wanted the workers in certain specific categories of employment of whom Independent was exclusive bargaining representative under its agreement with American Sugar, to join International or be replaced by members of the latter;

e—that Pimpinella, after Collazzo's talk to the members of Independent referred to in (b) above, gave a quantity of notices, printed on stationery of Local 1814, to American Sugar's dock superintendent, which contained, among other things, a request that the members of Independent be discharged because of their refusal to join International. Since the notices were printed on its stationery it is obvious that Local 1814 expected to be the beneficiary of any defections from Independent;

f—a Mr. Moock, an international Vice-President of International, was asked by one Lawrence B. Keegan, personnel manager of American Sugar's Philadelphia plant, which was then being picketed, the reason therefor, and replied, "You fel-

lows could end this trouble very easily by giving us the jobs that belong to us in Brooklyn." (S.M. p. 210.)

I am satisfied, also, that, quite apart from its participation in the acts and conduct of International hereinabove referred to, as well as others disclosed by the record, Local 1814, through Pimpinella, Harun and others of its representatives, itself committed acts which were violative of § 8(b) (4) (C) of the Act.

International denies that the acts and conduct committed by it in and about American Sugar's plant were unlawful, or constituted unfair labor practices within the meaning of the Act. It bases its contention on these facts. American Sugar, which does its own stevedoring work in connection with the unloading of raw sugar at its dock adjoining its Brooklyn plant, is a member of the New York Shipping Association, Inc., hereinafter called the Association, an organization of contracting stevedores and deepwater shipping lines operating in and around the Port of New York. On October 25, 1956, after an election duly held, the Board certified International as the collective bargaining representative of longshoremen employed by members of the Association.

Following such certification the Association entered into an agreement with International and its affiliated locals, hereinafter referred to as the General Cargo Agreement, effective so far as is here pertinent, for the period commencing on October 1, 1956 and terminating on September 30, 1959. (Respondent International's Exhibit C.) That agreement covered employees engaged in "the work pertaining to the rigging of ships, the coaling of same, the loading and unloading of all cargoes, including mail, ships' stores and baggage, and the handling of lines in connection with the docking and undocking of ships in the Port of Greater New York and vicinity," and contained a provision under which the employer-members of the Association agreed not to directly perform or contract out work on a pier "which historically and regularly has been and current-ly is performed by employees covered by this agreement," unless the same is performed by employees covered by agreements with International.

The General Cargo Agreement contained provisions for the handling and disposition of grievances and disputes arising between the parties, including the establishment of a so-called Joint Labor Relations Committee, composed of representatives of International and the Association, to which were to be submitted for review grievances relating to the interpretation of provisions contained in the said agreement. In the event that said Committee should be unable to agree on the determination of such grievance or dispute, it was vested with authority, upon motion of either party, to refer the matter to arbitration, the submission to which, under the agreement, would then be obligatory on the Association, International and its affiliated locals. Provision was also made for the selection, if necessary, of an arbitrator, whose decision was to be final.

In June, 1959 International filed a grievance against American Sugar with the Joint Labor Relations Committee, claiming that American Sugar was not complying with the General Cargo Agreement in that it was not employing members of International to perform all of the work of unloading ships provided for in said agreement. More specifically, it charged that its members, and those of its affiliated locals, were entitled under said agreement to perform work in certain categories of employment which were included in the unit covered by the certification of Independent.

Hearings on said grievances were held by the Joint Labor Relations Committee and after the conclusion thereof it adopted a resolution to the effect that American Sugar was obliged under the General Cargo Agreement to unload vessels with International's members "to the first place of rest". It was unable, however, to agree on a definition of that term. Accordingly, the matter was referred to an arbitrator, who, after further hearings, rendered his opinion and

decision to the effect that the first place of rest is "the place where the sugar lands and is deposited on the Landing Belt."

It may be noted that in January, 1958 International and its affiliate, Local 1476, predecessor of Independent at American Sugar, entered into an agreement with the latter covering employees engaged in substantially the same activities as those performed by members of Independent. That agreement, by its terms, covered employees "who perform those tasks which follow the receipt of raw sugar *at the string piece of the raw sugar dock* \* \* \*" and excluded "*longshoremen* engaged in the unloading of raw sugar and the deposit thereof *at the string piece of* the raw sugar dock. \* \* \*" (Emphasis added.)

International demands the right to be the sole bargaining representative of those employees who perform services between the string piece and the landing belt, and claims that, since it seeks representation of only part of the employees covered by American Sugar's agreement with Independent, its conduct has not been violative of § 8(b) (4) (C) of the Act. It cites Douds v. Local 1250, etc., 2 Cir., 173 F.2d 764, 9 A.L.R.2d 685, as authority for its claims. That case is distinguishable from the case at bar.

Further, International contends, in effect, that the General Cargo Agreement, in so far as it has been interpreted by the Arbitrator, as aforementioned, is paramount to and supersedes the certification of Independent and its agreement with American Sugar. Quite to the contrary, upon certification of Independent the General Cargo Agreement, to the extent that it was in conflict with such certification and ensuing agreement, was of no further force and effect. See Modine Manufacturing Company v. Grand Lodge International Ass'n of Machinists, 6 Cir., 216 F.2d 326. Under § 9 of the Act it is the Board's function, with certain exceptions not here pertinent, to decide and define the appropriate unit for collective bargaining. As a matter of fact, compliance by American Sugar with the decision of the Arbitrator would have exposed it to a charge of unfair labor practice by Independent. If International and Local 1814 felt aggrieved their remedy, instead of engaging in a strike, was to file a charge of unfair labor practice with the Board against American Sugar. It may be added that International's strike and work stoppage in August, 1959, was violative of Part III of the General Cargo Agreement.

For the foregoing reasons it is my belief that the issuance of a preliminary injunction would be just and proper since the respondents, unless restrained, are likely to continue their acts, thereby causing irreparable injury to American Sugar.

Accordingly, the Board's application for a preliminary injunction, as prayed for in the petition, is granted, to be effective until its determination of the charges filed by American Sugar.

Submit findings of fact, conclusions of law, and order, in conformity herewith.